# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

MARY FLOWERS                                                            PLAINTIFF

v.                            NO. 4:17CV00604 JLH

MAIRI McCARTNEY, in her
individual and official capacities, et al.                            DEFENDANTS

## OPINION AND ORDER

Mary Flowers worked as a nurse at the University of Arkansas for Medical Sciences. She entered into a contract with UAMS that provided for her to work on weekends with an additional 30% pay as long as she did not miss more than six weekend shifts during the contract's six-month period. In the second half of 2016, Flowers missed more than six shifts due in part to her taking FMLA leave in July and August. When she returned to work, UAMS discontinued her 30% weekend pay differential. After Flowers continued to clock in using the 30% pay differential code despite being told she was not receiving such pay anymore, UAMS terminated her employment in January 2017.

Flowers sued. Her complaint asserts violations of the Family and Medical Leave Act, the Americans with Disabilities Act, the Rehabilitation Act, and 42 U.S.C. § 1983. She also brings state law claims for breach of contract and an Arkansas Civil Rights Act violation. The defendants move for summary judgment. For the reasons to be explained, their motion is granted.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A movant meets its

"far from stringent" initial burden if it points out that there is an absence of evidence to support the nonmoving party's case. *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018). Once this is done, the nonmoving party must submit evidentiary materials showing there is a genuine issue for trial. *Id.* at 997. A genuine dispute of material fact exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

As mentioned, Flowers was a nurse who worked weekend shifts at UAMS. All nurses working weekend shifts received a 10% weekend differential increase in pay, but some nurses who worked weekend shifts signed a "Weekend Option Agreement" which provided, instead, for a 30% weekend pay differential. To receive the 30% increase in pay, the nurses agreed not to miss more than six[1] weekend shifts. If a nurse missed more than six shifts, that nurse no longer qualified for the 30% pay differential and could not apply to receive the weekend option pay for one year.

Flowers was on a Weekend Option Agreement from January 1, 2016 to June 30, 2016. During that period she missed work for her mother's illness and funeral. The parties dispute whether Flowers was on a Weekend Option Agreement from July 1, 2016 to December 31, 2016. Flowers said she slid the signed contract under her supervisor's door; the defendants say she did not. For the purposes of this motion the Court assumes that Flowers turned the contract in and was on the Weekend Option Agreement for the second half of 2016.

Flowers began having health problems requiring hospitalization in mid-July. She took FMLA leave from July 23, 2016 until August 10, 2016. During that FMLA leave, Flowers missed six

---

[1] The contract says four shifts during the contract period, and two shifts between contract periods, for a total of six shifts. *See* Document #28-4. The parties agree, though, that in practice the nurses could miss six shifts during the contract period, as the six-month contracts were back-to-back.

weekend shifts. Prior to that leave she had also missed two other weekend shifts for a vacation, so by the time she returned to work in August, Flowers had missed more than six weekend shifts.

When Flowers returned to work, UAMS discontinued her 30% weekend pay differential. In November, Flowers asked a supervisor why she did not receive the 30% pay differential during the previous pay period. The supervisor responded that she was not in the system as a weekend option employee. Another supervisor told her a few days later that she was not on the pay differential due to her absences. Flowers continued to clock in the way she had always done, which, as she learned later, involved pushing a button indicating she was on the shift differential. UAMS characterized this as intentional falsification of time records and terminated Flowers's employment in January 2017.

### *Family and Medical Leave Act*

Many of Flowers's claims rely on whether the defendants could lawfully discontinue the 30% shift differential because of her absences due to FMLA leave. Under the circumstances, they could.

An employee who takes FMLA leave is entitled, upon return, to be restored to the same position or an equivalent position with equivalent benefits, pay, and other terms and conditions. *See* 29 U.S.C. § 2614(a)(1). The FMLA also prohibits retaliation against an employee who exercises her FMLA rights. *Lovland v. Emp'rs Mut. Cas. Co.*, 674 F.3d 806, 810-11 (8th Cir. 2012).

The regulations interpreting the FMLA expand upon what "equivalent pay" means. They state:

(c) Equivalent pay.

(1) An employee is entitled to any unconditional pay increases which may have occurred during the FMLA leave period, such as cost of living increases. Pay

increases conditioned upon seniority, length of service, or work performed must be granted in accordance with the employer's policy or practice with respect to other employees on an equivalent leave status for a reason that does not qualify as FMLA leave. An employee is entitled to be restored to a position with the same or equivalent pay premiums, such as a shift differential. If an employee departed from a position averaging ten hours of overtime (and corresponding overtime pay) each week, an employee is ordinarily entitled to such a position on return from FMLA leave.

(2) Equivalent pay includes any bonus or payment, whether it is discretionary or non-discretionary, made to employees consistent with the provisions of paragraph (c)(1) of this section. However, if a bonus or other payment is based on the achievement of a specified goal such as hours worked, products sold or perfect attendance, and the employee has not met the goal due to FMLA leave, then the payment may be denied, unless otherwise paid to employees on an equivalent leave status for a reason that does not qualify as FMLA leave. For example, if an employee who used paid vacation leave for a non–FMLA purpose would receive the payment, then the employee who used paid vacation leave for an FMLA–protected purpose also must receive the payment.

29 C.F.R. § 825.215(c).

The regulation explicitly allows employers to withhold a bonus or "other payment" that is based on the achievement of a goal related to hours or attendance. Even if the employee does not meet the goal due to FMLA leave, the employer may withhold the payment—so long as the employer would withhold it for non-FMLA leave as well. Accordingly, the Ninth and Tenth Circuits have held that, pursuant to the regulation's plain language, absences caused by FMLA leave may count as absences with respect to bonuses, so long as other leave is treated the same way. *See Jefferson v. Time Warner Cable Enters. LLC*, 584 F. App'x 520, 523 (9th Cir. 2014) (affirming summary judgment for employer who prohibited employee from earning bonuses while on FMLA leave because employer did the same whether leave was protected or unprotected); *Keeler v. Aramark*, 483 F. App'x 421, 423 (10th Cir. 2012) (affirming summary judgment for employer who treated pay bonuses based on attendance on a particular workday the same, whether absence was for

FMLA leave or not). Various district courts have held likewise. *E.g.*, *Dyer v. Ventra Sandusky, LLC*, 317 F. Supp. 3d 953 (N.D. Ohio 2018) (explaining that before 2009 taking FMLA leave could not disqualify an employee from bonuses, but now an employer can withhold an attendance bonus for taking FMLA leave so long as it treats equivalent non-FMLA leave the same way); *see also Skelton v. Gold's Holding Corp.*, 2013 WL 12106888 (W.D. Tex. Dec. 30, 2013); *Khami v. Ortho-McNeil-Janssen Pharm., Inc.*, 2012 WL 414812 (E.D. Mich. Feb. 8, 2012).

The regulation does state that "[a]n employee is entitled to be restored to a position with the same or equivalent pay premiums, *such as a shift differential*." 29 C.F.R. § 825.215(c)(1) (emphasis added). But considering this language in context, it applies when the shift differential is not premised upon hours worked or an attendance record. Read as a whole, the regulation provides that FMLA and other leave must be treated the same way. As explained above, bonuses or other payments based on hours worked or attendance may be withheld based on FMLA leave so long as all leave is treated the same. See *id.* § 825.215(c)(2). In addition, pay increases premised upon seniority, length of service, or work performed must be treated the same as for other employees on leave for a reason that does not qualify as FMLA leave. *Id.* § 825.215(c)(1). Thus, reading the shift differential language in context, a shift differential premised on a specified goal, such as hours or attendance, may be withheld based on FMLA leave only if other leave is treated the same way.

Here, under the Weekend Option Agreement, if the employee takes off more than the allotted number of shifts—whether the leave is scheduled or unscheduled—then that employee no longer qualifies for the weekend option differential. *See* Document #28-4 at 2. Under the agreement, then, the 30% differential is a bonus or other payment premised on an attendance record, and such a

payment may be denied based on absences from FMLA leave—so long as other absences are treated likewise.

On its face, the contract treats absences the same whether they are FMLA leave or not. *See id.* ("[A certain amount of leave] may be taken as scheduled time off (vacation or holiday) or unscheduled absence due to illness, family illness, funeral leave, etc."). The defendants have also provided evidence that, in practice, all absences are treated the same. *See* Documents #28-2 at 1-2 and #28-3 at 2. In response to the motion for summary judgment, Flowers says that "a woman went out on non-FMLA leave exceeding that permitted under the WEO contract, after the death of a loved one, and was allowed to return to work on WEO," but she does not cite anything in the record to support this statement. *See* Document #41 at 9. Absent proof that, for purposes of the Weekend Option Agreement, the defendants only counted absences taken for FMLA leave but did not count absences during other kinds of leave, there is no genuine issue of material fact. Based on the above regulation and persuasive authority, the defendants' determination that Flowers did not qualify for the 30% pay differential after missing six shifts, some of which were FMLA leave, did not violate the FMLA as a matter of law.

### *Americans with Disabilities Act & Rehabilitation Act*

Flowers asserts a claim under the Americans with Disabilities Act against UAMS employees, McCartney, Butler, Sander, and Bradley, in their official capacities. *See* Document #14 at 1-2, 11. She also brings a claim under the Rehabilitation Act against the Board of Trustees of the University of Arkansas System. *Id.* at 11. She says that these defendants "discriminated against [her] based on the issue of disability, and have retaliated against her based on her request for accommodation in the form of leave." *Id.* at 12. She seeks a variety of injunctive relief, such as cleansing of her

personnel file and improvement on handling FMLA leave at UAMS. *See id.* at 14. She seeks damages against the Board of Trustees under the Rehabilitation Act. *Id.* at 12. *See Jim C. v. United States*, 235 F.3d 1079 (8th Cir. 2000) (holding that state agencies receiving federal funds waive their immunity to suit in federal court for Rehabilitation Act violations).

Both the ADA and the Rehabilitation Act prohibit discrimination against a "'qualified individual with a disability' because of the disability." *Scruggs v. Pulaski Cnty., Ark.*, 817 F.3d 1087, 1092 (8th Cir. 2016) (quoting *Bahl v. Cnty. of Ramsey*, 695 F.3d 778, 783 (8th Cir. 2012)).[2] On her discrimination claim, Flowers must show that she is disabled under the ADA, that she is a qualified individual under the ADA, and that she suffered an adverse employment action because of her disability. *Id.* (citation omitted). On her retaliation claim, absent direct evidence, Flowers must show that she engaged in statutorily protected activity, that her employer took an adverse action against her, and that there was a causal connection between the two. *Id*. at 1094. On both claims, if Flowers meets her burden, the employer must show a legitimate, nondiscriminatory reason for the adverse action. *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 755 (8th Cir. 2016). If the employer does so, the burden then shifts back to Flowers to show the employer's given reason was actually a pretext. *Id.*; *E.E.O.C. v. Product Fabricators, Inc.*, 763 F.3d 963, 972 (8th Cir. 2014).

Flowers has failed to make a prima facie case on either claim because she cannot prove causation for either claim. She says that she was discriminated and retaliated against because she requested accommodation in the form of leave. *See* Document #14 at 12; Document #41 at 7. When Flowers returned from leave in August, she no longer qualified for the 30% shift differential, which

---

[2] The Rehabilitation Act requires that federal funding be involved, but cases interpreting either the Rehabilitation Act or the ADA are applicable to both and are interchangeable. *Id.* at 1092 n.3.

the Court will assume was an adverse employment action. *See Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000). Flowers can clearly draw a connection between the loss of her shift differential and her taking leave. She cannot, however, draw the necessary connection between the loss of her shift differential and her disability.[3]

As explained above, Flowers was under a contract to receive the shift differential in exchange for not missing more than six shifts. She missed six shifts, so she no longer qualified for the 30% pay increase. Flowers has not provided any evidence that her disability was a motivating factor, or the but-for reason, for the loss of her shift differential. *See Oehmke*, 844 F.3d at 756, 758 (explaining that discrimination claims may go forward based on mixed motives, and that but-for causation is required for retaliation claims). The weekend option contract treated all absences the same—it did not treat absences due to disability different from absences for vacations, funerals, inclement weather, car wrecks, car breakdowns, flight cancellations, emergency home repairs, or the like. The defendants have pointed to the contract, which plainly states that all leave would be treated the same, as well as employee declarations that all leave was in fact treated the same for purposes of losing the shift differential under the Weekend Option Agreement. The undisputed evidence shows that Flowers no longer qualified for the shift differential because she missed more than the allotted number of shifts. She was treated like any nurse who agreed to the weekend option contract and missed the same number of shifts for reasons other than disability.

Likewise, Flowers cannot show that her termination was causally connected to any disability or request for an accommodation. *Dropinski v. Douglas Cnty.*, 298 F.3d 704, 707 (8th Cir. 2002)

---

[3] For purposes of this motion, although the parties dispute these facts, the Court assumes that Flowers was disabled and was a qualified individual within the meaning of the ADA. The Court also assumes that Flowers requested an accommodation, which is a protected activity under the ADA. *Product Fabricators*, 763 F.3d at 972.

(noting that termination is an adverse employment action). She has presented no evidence that her disability, or her request for an accommodation, was a reason for her January 2017 termination. Summary judgment is therefore appropriate on the ADA and Rehabilitation Act claims.

### *Breach of Contract*

Flowers asserts that the Board of Trustees breached the Weekend Option Agreement. *See* Document #14 at 13. A suit against the Board of Trustees is a suit against the state and is barred by sovereign immunity. *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1067 (8th Cir. 2017). Flowers also says she brings no official capacity state law claims. *See* Document #41 at 1. Broadly construing the complaint as asserting a breach of contract claim against the individual defendants in their individual capacities only,[4] this claim fails as a matter of law. As this Court has explained,

> "Arkansas recognizes the general rule that where an agent names his principal and does not exceed his authority when contracting on the principal's behalf, the agent is not personally liable upon the contract unless the agent agrees to be." *McCullough v. Johnson*, 307 Ark. 9, 11, 816 S.W.2d 886, 887 (1991); *see also* Restatement (Third) of Agency § 6.01 (2006); Restatement (Second) of Agency § 320 (1958).

*Sutton v. Ark. State Univ.*, 2011 WL 3861391, at *4 (E.D. Ark. Sept. 1, 2011). The named individuals who are sued in their individual capacities—McCartney, Butler, Sander, Starks, and Bradley—were not parties to the Weekend Option Agreement. *See id.* (citing James J. O'Malley, *Cause of Action for Wrongful Discharge from Employment in Breach of Contract*, in 18 Causes of Action 229, § 35 (1989) ("Individual managers and supervisors who hired the employee or who made and carried out the decision to discharge the employee ordinarily will not be liable for breach

---

[4] *See* Document #14 at 14 ("On Count III, on the procedural due process and contract claims, Plaintiff seeks lost wages against the Board, and lost wages and compensatory and punitive damages against the individual defendants.").

9

of contract because ordinarily they are not parties to the contract.")). Summary judgment must be granted.

### *Procedural Due Process Violations*

Finally, Flowers sues "the individual and official capacity defendants" for procedural due process violations under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act. *See* Document #14 at 13. In her response to summary judgment she cedes the official capacity § 1983 claims and says she brings no official capacity state law claims. *See* Document #41 at 1. Remaining, therefore, is a claim against five individuals—McCartney, Butler, Sander, Starks, and Bradley—in their individual capacities for due process violations under § 1983 and the Arkansas Civil Rights Act.[5]

The state may not deprive a state employee of a constitutionally protected property interest without affording him or her due process. *See* U.S. Const. Amend. XIV; *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576, 92 S. Ct. 2701, 2708-09, 33 L. Ed. 2d 548 (1972). In the employment context, a property interest does not arise from a need, desire, or unilateral expectation of a benefit; rather, the employee must "have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577, 92 S. Ct. at 2709. State law defines property interests. *Id.*

Flowers says that the defendants violated her procedural due process rights when she lost the weekend shift differential without notice, but she points to nothing in Arkansas law that would entitle her to the shift differential despite having missed more than six shifts. The contract itself did not create such an entitlement. Rather, under the plain contract language, Flowers no longer

---

[5] These statutes are interpreted similarly. *See* Ark. Code Ann. § 16-123-105(c) (stating that courts may look to decisions interpreting 42 U.S.C. § 1983 as persuasive authority when analyzing claims under the Arkansas Civil Rights Act).

qualified for the shift differential if she missed more than six shifts.[6] Flowers has never disputed that she missed the shifts. She was paid according to the contract; and, according to the contract, after she missed six shifts she no longer qualified for the 30% shift differential. Flowers has only contended that including the shifts that she missed due to FMLA leave was against federal law, and as the Court has explained, Flowers is incorrect on this point. She did not have a property interest, under state law, in continuing to receive the shift differential after missing six shifts. Summary judgment is granted on Flowers's due process claims.

## CONCLUSION

For these reasons, the motion for summary judgment is GRANTED. Document #28.

IT IS SO ORDERED this 8th day of January, 2019.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[6] Moreover, the contract allows UAMS to "alter or cancel the terms" of the contract, with a minimum of fourteen days' notice to the employee. *See* Document #28-4. Thus, UAMS could have ended the shift differential pay at any time, regardless of employee absences.